UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ORLANDO DUPEYRON MILIAN,

Petitioner,

v. Case No. 3:26-cv-1407-MMH-PDB

WARDEN, NORTH FLORIDA DETENTION FACILITY and U.S. ATTORNEY GENERAL,

Respondents.

---

# ORDER

## I. Status

Petitioner Orlando Dupeyron Milian initiated this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 on May 28, 2026 (Doc. 1). The Federal Respondent filed an Opposition (Doc. 5) arguing that Milian's claim pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001), was premature, and United States Immigration and Customs Enforcement (ICE) properly revoked Milian's Order of Supervision (OSUP). Milian replied (Doc. 8). This case is ripe for review.

## II. Background

Milian, a citizen of Cuba, entered the United States on April 17, 1989. Doc. 5-1 at 1. Following removal proceedings, on May 19, 1998, an immigration judge ordered Milian removed to Cuba. Doc. 5-2 at 1. The Board of Immigration

Appeals subsequently dismissed his appeal. Doc. 5-3 at 2. Milian's detention history reflects that ICE detained him on October 2, 2002, and released him on an OSUP on January 1, 2003. Doc. 5-4 at 1. ICE again briefly detained Milina on June 29, 2021, and released him on an OSUP that same day. Id. On May 8, 2026, after Milian failed to appear for an OSUP appointment, ICE detained him for the third time. Doc. 5-1 at 2.

## III. Analysis

### A. Zadvydas Claim and Due Process Claims

In Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. Further, the Court concluded that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the Government to provide evidence sufficient to rebut that showing. Id. (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only

must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale, 287 F.3d at 1052.

In this case, the Court finds that the presumptively reasonable six-month period has not expired. Courts have used various methods to calculate the six-month period. Some courts have considered in the aggregate all periods of detention following an order of removal, regardless of whether the periods of detention were consecutive. See Jaranow v. Bondi, 819 F. Supp. 3d 1229, 1236 (W.D. Wash. 2026) (collecting cases from the Ninth Circuit that "have found that the six-month period of detention need not be consecutive to reach the limit established in Zadvydas"); Patel v. Bondi, No. CV 25-16218 (KMW), 2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"—not just the current length of detention). Other courts have not—instead they have determined that each period of detention restarts the removal-period clock. See Barrios v. Ripa, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions," because doing so would raise constitutional concerns to "any subsequent period of detention, even one day," "[a]nd adjudicating the constitutionality of every re-detention would obstruct

an area that is in the discretion of the Attorney General—effectuating removals”); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) (“[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE.”). Still other courts appear to have determined that the presumptively reasonable six-month period includes the 90-day statutory removal period and the 90-days immediately thereafter and expires once that time has run. See Beltran v. Ripa, No. 2:25-cv-01174-SPC-NPM, 2026 WL 21252, at *2 (M.D. Fla. Jan. 5, 2026).

The Court is not persuaded that the presumptively reasonable period of detention restarts with each new detention in every circumstance. Instead, the Court determines that once an individual has been detained for more than six consecutive months after his final order of removal is entered, he has met the first prong of the Zadvydas test. Here, because Milian had not been detained for six consecutive months before he filed this case, his claim under Zadvydas is not yet ripe. Therefore, the Court will dismiss this claim. When Milian’s Zadvydas claim becomes ripe, he may file a new petition to seek discharge from custody while he awaits removal.

Insofar as Milian seeks to raise a freestanding procedural or substantive due process claim, the Court notes that when the Supreme Court confronted the constitutional contours of indefinite immigration detention in Zadvydas, it provided “a standard through which to judge indefinite-detention cases—the

Zadvydas standard." Martinez v. Larose, 968 F.3d 555, 566 (6th Cir. 2020). "In other words, the Zadvydas standard is due process: a § 1231 detainee who fails the Zadvydas test fails to prove a due process violation." Castaneda v. Perry, 95 F.4th 750, 760 (4th Cir. 2024). Thus, any independent due process claim fails.

**B. OSUP Claims**

With respect to Milian's assertion that the Federal Respondent unlawfully revoked his OSUP, ICE may revoke a noncitizen's OSUP if "[i]t is appropriate to enforce a removal order[.]" 8 C.F.R. § 241.4(l)(2)(iii). "Upon revocation," ICE must notify an alien "of the reasons for revocation" and afford him "an initial informal interview promptly after his . . . return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). Here, the Federal Respondent's exhibits reflect that the morning after ICE detained Milian, ICE provided him with a Notice of Revocation of Release, advising him that ICE was revoking his OSUP because he violated a condition of release when he failed to report on February 18, 2026, and "[i]t is appropriate to enforce [his] removal order." Doc. 5-5 at 2–3. ICE also provided him with an informal interview. Id. at 4. Thus, it appears that ICE complied with its regulations in revoking Milian's OSUP.

To the extent Milian also raises a claim under U.S. ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), he is not entitled to relief. Under the Accardi doctrine, federal agencies are required to follow their own regulations and procedures to ensure a fair administrative process. Id. at 268. As discussed above, the Federal Respondent has complied with the applicable OSUP regulations. Therefore, Milian's Accardi claim fails.

Accordingly, it is **ORDERED**:

1. The Petition (Doc. 1) is **DISMISSED without prejudice** as to Milian's Zadvydas and due process claims and **DENIED without prejudice** with respect to Milian's claims relating to the revocation of his OSUP.

2. Respondent Warden's Motion to Dismiss (Doc. 7) and Milian's Motion to Expedite Consideration (Doc. 10) are **DENIED as moot**.

3. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close the file.

4. The **Clerk of Court** shall send Milian a habeas corpus petition under 28 U.S.C. § 2241 and an application to proceed in forma pauperis (prisoner filings).

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of October, 2026.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 10/23
c:
Orlando Dupeyron Milian, #A025417261
Counsel of Record